IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRIP WHATLEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 1:19-cv-40-ECM |
| | ) | (WO) |
| THE OHIO NATIONAL LIFE | ) | |
| INSURANCE COMPANY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

On January 11, 2019, Trip Whatley, Susan Moore, Tracy Lentz, Keith Bowers, and Chris Noone (collectively "Plaintiffs") initiated this lawsuit against Ohio National Life Insurance Company, Ohio National Life Assurance Company, and Ohio National Equities, Inc. (collectively "Defendants"). (Doc. 1). On April 2, 2019, the Plaintiffs filed an amended complaint. (Doc. 19). In their amended complaint, the Plaintiffs bring four causes of action against the Defendants: (1) breach of contract; (2) unjust enrichment; (3) promissory estoppel; and (4) tortious interference with business relations. (*Id.* at 21-25).

This matter is now before the Court on the Defendants' Motion to Dismiss the Plaintiffs' amended complaint. (Doc. 20). The Court must resolve four primary issues in ruling on the Defendants' Motion to Dismiss: (1) whether the Court may exercise personal jurisdiction over the Defendants in connection with the claims of non-resident Plaintiffs Bowers and Noone; (2) whether the Plaintiffs have standing to assert claims based on an

alleged breach of contract to which they are not a party; (3) whether the Plaintiffs' may maintain their equitable claims; and (4) whether the Defendants intentionally interfered with the Plaintiffs' business relations.

For the following reasons, the Court resolves each of these issues in favor of the Defendants.[1] Accordingly, the Defendants' Motion to Dismiss is due to be granted.

## I.     BACKGROUND

The Plaintiffs are licensed sales representatives for the following broker dealers: LPL Financial, ProEquities, Inc., Securities America, and Next Financial Group. These broker dealers, through their representatives such as the Plaintiffs, sold certain variable annuities issued by the Defendants pursuant to Selling Agreements between the Defendants and individual broker dealers. The Plaintiffs are not parties to these Selling Agreements, but they assert that they are intended third-party beneficiaries of the Selling Agreements.

The Plaintiffs allege that the Defendants breached the Selling Agreements by ceasing payment of trail commissions on previously sold variable annuity contracts after the Defendants terminated the Selling Agreements without cause effective December 12, 2018. With respect to their third-party beneficiary status, the Plaintiffs contend that "the Selling Agreements clearly and expressly manifest an intention that sales representatives,

---

[1] The Plaintiffs also allege a claim for declaratory relief pursuant to 28 U.S.C. § 2201. (Doc. 19 at 25). A federal court may only issue a declaratory judgment, however, if an actual controversy exists between the parties. *Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1210 (11th Cir. May 30, 2019). Here, no actual controversy exists between the parties because the Plaintiffs fail to establish, as a matter of law, any of their underlying substantive claims. Thus, the Plaintiffs are not entitled to declaratory relief.

such as Plaintiffs, will benefit from Selling Agreements in the form of pass-through commissions, including trail commissions." (Doc. 19 at 16).

On April 16, 2019, the Defendants filed a Motion to Dismiss the Plaintiffs' claims pursuant to rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. The Defendants assert that the Court "lacks personal jurisdiction over [the] Defendants as to the claims of two of the Plaintiffs, Keith Bowers and Chris Noone." (Doc. 20 at 2). Moreover, the Defendants contend that the Plaintiffs do not have standing to assert a breach of contract claim because they are neither parties to the Selling Agreement nor intended third-party beneficiaries. (*Id*. at 3). Lastly, the Defendants argue that the remainder of the Plaintiffs' claims – unjust enrichment, promissory estoppel, and tortious interference with business relations – fail as a matter of law.

## II.     JURISDICTION and VENUE

The Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and complete diversity exists between the parties. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

The Defendants, however, contend that the Court may not exercise personal jurisdiction over them as it relates to the claims of non-resident Plaintiffs Bowers and Noone. The Plaintiffs disagree, asserting that the Court may exercise personal jurisdiction over the Defendants because the Defendants' contacts with Alabama give rise to both general and specific jurisdiction.

The Defendants are Ohio corporations, each with its principal place of business located in Cincinnati, Ohio. Plaintiff Bowers is a resident of the state of Georgia and Plaintiff Noone is a resident of the state of Mississippi.

### III.    PERSONAL JURISDICTION

*A. Standard of Review*

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for a directed verdict." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Moreover, whether a district court may exercise personal jurisdiction over a defendant is a question of law. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009).

*B. Discussion*

    i.    The non-resident Plaintiffs fail to establish personal jurisdiction over the Defendants

The Defendants move to dismiss the claims of non-resident Plaintiffs Bowers and Noone pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Specifically, the Defendants assert that "Bowers and Noone, as non-Alabama residents who have not alleged any conduct by Defendants in Alabama that caused them alleged harm, are not entitled to piggy back on the claims of other plaintiffs as to which personal jurisdiction

4

over Defendants may exist." (*Id*. at 9-10). Further, the Defendants contend that the Plaintiffs' factual allegations fail to establish either general or specific jurisdiction in connection with the claims of Bowers and Noone. (*Id*. at 10). With respect to general jurisdiction, the Defendants assert that the Plaintiffs' factual allegations fail to demonstrate that the Defendants' contacts with the forum place them "at home" in the state of Alabama. (*Id*. at 11). Regarding specific jurisdiction, the Defendants contend that none of their contacts with the state of Alabama give rise to Bowers' and Noone's alleged injuries, thus defeating personal jurisdiction. (*Id*. at 13).

The Plaintiffs argue that the Defendants are "subject to general jurisdiction in the state of Alabama with regard to the claims of all Plaintiffs, including non-resident Plaintiffs Bowers and Noone, by virtue of [the Defendants'] continuous and systematic activities and affiliations within the state of Alabama, which render it essentially 'at home' in Alabama . . .." (Doc. 19 at 7). In support of their general jurisdiction claim, the Plaintiffs allege that the Defendants had the following contacts with the forum: the Defendants maintained a subsidiary, sold annuity products, registered to do business, appointed a registered agent, and marketed life insurance products in Alabama. (*Id*. at 8-9).

Concerning specific jurisdiction, the Plaintiffs appear to argue that because non-resident Plaintiffs Bowers and Noone entered into Selling Agreements with the Defendants in Georgia and Mississippi that were substantially similar to the Selling Agreements the resident Plaintiffs entered into in Alabama, the Court may exercise personal jurisdiction over the Defendants. The Court disagrees with both of the Plaintiffs' jurisdictional arguments.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Here, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." *Sloss Indus. Corp. v. Euisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)). "Thus, the sole issue in this [C]ourt's jurisdictional analysis is whether Alabama's exercise of jurisdiction over [the Defendants] violates due process." *Aeropower, Ltd. v. Matherly*, 511 F.Supp.2d 1139, 1154 (M.D. Ala. 2007).

Addressing general jurisdiction first, "[a] court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the state are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The United States Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general jurisdiction] there." *Daimler AG v. Bauman*, 517 U.S. 117, 137 (2014); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (noting the limited circumstances that give rise to general jurisdiction over non-resident defendant).

Absent exceptional circumstances, general jurisdiction only exists over a corporate defendant in its place of incorporation or principal place of business. *E.g.*, *Goodyear*, 564 U.S. at 924; *Daimler*, 571 U.S. at 137; *BNSF*, 137 S. Ct. at 1558. Exceptional

circumstances exist when "a corporate defendant's operations in another forum '[are] so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF*, 137 S. Ct. at 1558 (quoting *Daimler*, 571 U.S. at 139 n.19).

"The textbook case of general jurisdiction appropriately exercised over a foreign corporation that has not consented to suit in the forum" is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). *Goodyear*, 564 U.S. at 928 (citations omitted). In *Perkins*, the plaintiff sued a Philippine mining corporation in Ohio on a claim that did not arise in Ohio nor did it relate to the defendant's activities in that state. *Perkins*, 342 U.S. at 415. The defendant mining corporation had stopped its business activities in the Philippines because of World War II and began conducting such activities in the state of Ohio. *Id* at 447. Specifically, the defendant "corporation's president maintained his office there, kept company files in that office, and supervised from the Ohio office 'the necessarily limited wartime activities of the company.'" *Id*. at 447-48. Because these facts established that Ohio was the defendant corporation's principal, albeit temporary, place of business, Ohio courts could exercise general jurisdiction over the defendant without violating due process. *Id*. at 448.

In the instant case, the Plaintiffs' factual allegations concerning general jurisdiction fail to establish that the Defendants are at home in Alabama. First, the Plaintiffs concede that the Defendants are incorporated in Ohio and maintain their principal places of business there. (Doc. 19 at 5). Next, unlike *Perkins*, the fact that the Defendants "marketed and sold annuities and other insurance products in the state of Alabama on a systematic and regular basis" did not constitute relocation of their principal places of business from Ohio to

Alabama. (*Id*. at 6). In fact, the *Daimler* court held that general jurisdiction did not exist over a defendant whose contacts with the forum state were far more substantial than those of the Defendants in the present case. *See Daimler*, 571 U.S. at 123 (holding that general jurisdiction did not exist when the defendant's wholly owned subsidiary maintained a production facility in the forum state and was the largest supplier of luxury vehicles there, accounting for 2.4% of the defendant's worldwide sales). Indeed, "a corporation's 'continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id*. at 132 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)).

The Plaintiffs' arguments that the fact that the Defendants appointed agents for service of process and registered to do business in Alabama supports a finding of general jurisdiction also fall short. *See Beasley v. Providence Hosp*., 2018 WL 2994380 (S.D. Ala. 2018) (finding no general jurisdiction even though the defendant was licensed to do business in Alabama and had a registered agent for service of process in the state); *see also Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000) (holding "[t]he casual presence of a corporate agent in the forum is not enough to subject the corporation to suit where the cause of action is unrelated to the agent's activities.").

Moreover, the presence of the Defendants' subsidiary, Ohio National Insurance Agency of Alabama, Inc., in Alabama does not, by itself, give rise to general jurisdiction over the Defendants. *See Binder v. Cmty. Health Sys.*, 2017 WL 283260 at *3 (N.D. Ala. 2017) (finding that the relationship between parent and subsidiary alone did not establish general jurisdiction over the defendant). Thus, the Defendants' affiliations with Alabama

"are not 'so substantial' as to make this one of those 'exceptional' cases in which a non-resident corporation is at 'home' in a forum other than its place of incorporation or principal place of business. *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Daimler*, 571 U.S. at 139 n.19).

Because the Defendants are not subject to general jurisdiction in Alabama, the Court must consider whether specific jurisdiction exists over the claims of non-resident Plaintiffs Bowers and Noone. The Eleventh Circuit employs a three-part test to determine if a court may exercise specific jurisdiction over a defendant:

> First, the defendant must have contacts related to or giving rise to the plaintiff's cause of action. Second, the defendant must, through those contacts, have purposefully availed itself of forum benefits. Third, the defendant's contacts with the forum must be such that it could reasonably anticipate being haled into court there.

*Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996)). Further, "a fundamental element of the specific jurisdiction calculus is that the plaintiff's claim must 'arise out of or relate to' at least one of the defendant's contacts with the forum." *Id.* (citations omitted). Put differently, the court's "inquiry must focus on the direct causal relationship among 'the defendant, the forum, and the litigation.'" *Id.* (citations omitted).

The United States Supreme Court decision, *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), sheds light on the requirement that a non-resident plaintiff's claim must arise out of or relate to the defendant's contacts with the forum state. In *Bristol-Myers*, a group of non-resident plaintiffs brought suit against the defendant in California

Superior Court, "asserting a variety of state-law claims based on injuries allegedly caused by [the defendant's] drug called Plavix." *Id*. at 1777. Importantly, the court held that California could not exercise specific jurisdiction over the defendant as it related to the non-resident plaintiffs' claims. In reaching its decision, the court noted that the non-resident plaintiffs failed to allege any connection between their claims and the forum state. *Id*. at 1781. Specifically, "[t]he nonresident plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California." *Id*. at 1778. Moreover, the court reasoned "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id*. 1781 (emphasis in original).

Here, the claims of non-resident Plaintiffs Bowers and Noone do not arise out of or relate to *any* of the Defendants' contacts with Alabama. First, like *Bristol-Myers*, non-resident Plaintiffs Bowers and Noone do not allege that they entered into the Selling Agreements with the Defendants in Alabama, solicited sales in Alabama, or suffered harm in the state. Further, as the court in *Bristol-Myers* highlighted, the fact that the resident Plaintiffs' claims arose from the Defendants' contacts with the forum does not allow the Court to assert specific jurisdiction over the claims of non-resident Plaintiffs Bowers and Noone. Nor can the Court exercise specific jurisdiction simply because the non-resident Plaintiffs allegedly suffered similar injuries as the resident Plaintiffs.

Bowers and Noone are residents of Georgia and Mississippi, and they have not alleged any connection between the state of Alabama and their specific claims. Thus, the Court finds specific jurisdiction lacking as to the claims of non-resident Plaintiffs Bowers and Noone. Because the Plaintiffs fail to establish a basis for either general or specific jurisdiction, the Defendants' Motion to Dismiss Bowers' and Noone's claims is due to be granted.

## IV.    MOTION TO DISMISS

*A. Standard of Review*

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In analyzing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court accepts the factual allegations in the complaint as true, and construes them in the light most favorable to the plaintiff. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012). However, "if allegations [in the complaint] are indeed more conclusory than factual, then the court does not have to assume their truth." *Id.* at 1337. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. Discussion

   i.    The Plaintiffs are not intended third-party beneficiaries under the Selling Agreements

The Defendants move to dismiss the Plaintiffs' breach of contract claim. (Doc. 20). Specifically, the Defendants argue that the Plaintiffs are not intended third-party beneficiaries because "the plain language of the Selling Agreements forecloses a finding that such agreement [sic] was [sic] entered directly or primarily for the benefit of [the Plaintiffs.]" (*Id*. at 15).  The Court agrees.

Ohio courts[2] employ the "intent to benefit" test found in the Restatement (Second) of Contracts § 302 to determine whether a third-party beneficiary may sue to enforce a contract to which they are not a party. *See Hill v. Sonitrol of SW Ohio, Inc.*, 36 Ohio St. 3d 36, 521 N.E.2d 780, 784 (1988).  Under this test, "if the promisee . . . intends that a third-party should benefit from the contract, then that third party is an 'intended beneficiary' who has enforceable rights under the contract." *Norfolk & W. Co. v. U.S.*, 641 F.2d 1201, 1208 (6th Cir. 1980).

Conversely, "[i]f the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary', who has no enforceable rights under the contract." *Id*.  The Supreme Court of Ohio elaborated on the

---

[2] The Court analyzes liability for breach of contract under Ohio law because Section 22 of the Selling Agreements reads "[t]his agreement will be construed in accordance with the laws of the State of Ohio." (Doc. 19-1 at 3).

intent to benefit test, stating "Ohio law . . . requires that for a third party to be an intended beneficiary under a contract, there must be evidence that the contract was intended to *directly benefit* that third party." *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 957 N.E.2d 3, 7 (2011) (emphasis added).

In support of their alleged status as intended third-party beneficiaries, the Plaintiffs assert, among other things, "[t]he Selling Agreements explicitly contemplate that broker-dealers will delegate the marketing and sale of Annuities to their employees or other third-parties who will act as "Representatives" as set forth in the Selling Agreements." (Doc. 19 at 14). Further, the Plaintiffs contend that "[t]he Selling Agreements expressly acknowledge that commissions paid by [the Defendants] to the broker-dealers will pass through to these sales representatives, including Plaintiffs, according to a separate agreement between the broker-dealer and sales representatives." (*Id*.). The Plaintiffs also allege that the Selling Agreements refer to them in their capacity as sales representatives more than twenty-five (25) times. (*Id*. at 15).

Even accepting the factual allegations as true and construing them in the light most favorable to the Plaintiffs, the Court concludes that they fail to plausibly state a claim for breach of contract. In two nearly identical cases, *Browning v. Ohio Nat'l Life Ins. Co*, 2019 WL 4885205 (S.D. Ohio Oct. 2, 2019) and *Cook v. Ohio Nat'l Ins. Co.*, 2019 WL 4885500 (S.D. Ohio Oct. 2, 2019), a federal court in Ohio addressed whether sales representatives qualified as intended third-party beneficiaries under Selling Agreements similar to those at issue in the present case. In both *Browning* and *Cook*, the Ohio court determined that the

sales representatives did not qualify as intended third-party beneficiaries, thus depriving them of standing to enforce the contract.

In reaching its decision, the *Browning* court examined several provisions of the Selling Agreements. First, the court highlighted Section 9 of the Selling Agreement, which reads "[c]ommissions payable in connection with the contracts shall be paid to [the broker dealers], or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement . . .." (Doc. 19-1 at 3). Based on this language, the court concluded "under the Selling Agreement the payment of compensation . . . flows only from [the Defendants] to [the broker dealers]." *Browning*, 2019 WL 4885205 at *3.[3] In other words, pursuant to the plain language in the Selling Agreements, the Defendants paid commissions to the broker dealers, not the Plaintiffs.

The court highlighted another provision of Section 9, which reads "[c]ompensation to the [broker dealers'] Representatives for Contracts solicited by the Representatives and issued by [the Defendants] will be governed by agreement between [the broker dealers] and its Representatives and its payment will be the [broker dealers'] responsibility." (Doc. 19-1 at 3). This provision "disclaimed any intention for [the Defendants] to render payment to [the plaintiff] for the solicitation of the variable annuity contracts." *Browning*, 2019 WL 4885205 at *3.

Moreover, the court found that this provision "did not mandate that [the broker dealers] remit the commissions it receiv[ed] from [the Defendants] for the sale of its

---

[3] The Court only cites *Browning* for purposes of brevity. However, *Cook* provides identical analysis of the issues presented in *Browning* and the present case.

14

annuities to [the plaintiff] who sold the annuities." *Id.* Instead, the provision made clear that the broker dealers maintained the responsibility to pay compensation, if any, to the plaintiff. *Id.* Thus, the Ohio court concluded "[t]he requirement to have a separate contract cuts against any suggestion that the Selling Agreement was intended to directly benefit [the plaintiff]." *Id.* (citing *Huff*, 957 N.E.2d at 7).

The analysis in *Browning* and *Cook* is on point and persuasive. Specifically, the provisions found in Section 9 of the Selling Agreements illustrate three important aspects of the contract: (1) the Defendants paid commissions directly to the broker dealers, not the Plaintiffs; (2) a separate agreement governed the payment of commissions, if any, from the broker dealers to the Plaintiffs; and (3) the payment of such commissions was the sole responsibility of the broker dealers. Taken together, the provisions contained in Section 9 of the Selling Agreements establish, as a matter of law, that the Plaintiffs are not intended third-party beneficiaries. [4]

Additionally, the number of other references[5] in the Selling Agreements to the Plaintiffs "do not demonstrate an intent to give enforceable rights to [the Plaintiffs]." *Id.* at

---

[4] The *Browning* court indicated that Financial Industry Regulatory Authority ("FINRA") Rule 2030 provided additional support for the finding that the Plaintiffs did not qualify as intended third-party beneficiaries under the Selling Agreements. *See Browning*, 2019 WL 4885205 at *3 (noting that FINRA Rule 2030 would create a "procedural dilemma" for the court because the rule "prohibits securities representatives from receiving compensation for the sale of variable insurance policies from the company that issued the policies."). Here, the Plaintiffs refute the *Browning* court's finding concerning FINRA Rule 2030 to the Plaintiffs' ability to qualify as intended third-party beneficiaries. (Doc. 33 at 4). The Defendants make no argument in their briefing about the application of FINRA Rule 2030 to the Plaintiffs' ability to qualify as intended third-party beneficiaries. Because the plain language of the Selling Agreements dictates a finding that the Plaintiffs are not intended third-party beneficiaries, the Court declines to make a determination about the application of FINRA Rule 2030 to the present case.

[5] For example, Section 4 of the Selling Agreement reads "[broker dealer] certifies that any Representative who requests appointment from [the Defendants] has not been convicted of a felony or a

15

*4. Far from directly benefitting them, these "[o]ther references to [the Plaintiffs] in the Selling Agreement appear intended for [the Defendants'] protection." *Id*. For example, such references "provide protection for [the Defendants] from unscrupulous, unqualified, or negligent representatives." *Id*.

The Plaintiffs rely on *Visintine & Co. v. New York, Chicago & St. Louis R. Co.*, 169 Ohio St. 505, 160 N.E.2d 311 (1959) to support their claim that they are intended third-party beneficiaries under the Selling Agreements. (Doc. 28 at 20). Specifically, the Plaintiffs cite *Visintine* for the proposition that "separate contracts that are interdependent and related to the same subject matter can, in fact, create third-party beneficiary rights in nonsignatories to one of the interrelated contracts . . .." (*Id*.). Contrary to the Plaintiffs' claims, *Visintine* does not apply to the instant case.

In *Visintine*, the Ohio Supreme Court held that the plaintiff was an intended third-party beneficiary under the construction contract at issue because the plaintiff fell "squarely within the definition of 'creditor beneficiary.'" *Visintine*, 160 N.E.2d at 313. The court noted "a person is a creditor beneficiary if the performance of the promise will satisfy an actual, supposed or asserted duty of the promisee to the beneficiary and is not intended as a gift." *Id*.

---

misdemeanor involving fraud or dishonesty." (Doc. 19-1 at 2). Section 5 reads "[broker dealers] shall have full responsibility for training and supervision of all Representatives associated with [broker dealers] who are engaged directly or indirectly in the offer or sale of the Contracts . . .." (*Id*. at 3). Section 16 provides "[broker dealers] and [their] Representatives are independent contractors with respect to [the Defendants]." (*Id*. at 4). Finally, Section 17 reads "[broker dealers] agree to notify [the Defendants] in a timely fashion of any disciplinary proceedings against any of [the broker dealers] Representatives arising from the solicitation of sales of the Contracts . . .." (*Id*.)

Unlike *Visintine*, the Plaintiffs are not creditor beneficiaries under the Selling Agreements. The Defendants did not enter into the Selling Agreements with the broker dealers to "satisfy an actual, supposed or asserted duty" to the Plaintiffs. Rather, the provisions of the Selling Agreements previously discussed emphasize that any duty to pay trail commissions to the Plaintiffs rested with the broker dealers, not the Defendants. Thus, the Plaintiffs' reliance on *Visintine* is unavailing.

Based on the plain language of the Selling Agreements, the Court concludes that the Plaintiffs are not intended third-party beneficiaries. Accordingly, the Defendants Motion to Dismiss the Plaintiffs' breach of contract claim is due to be granted.

ii. The Plaintiffs' unjust enrichment and promissory estoppel claims fail as a matter of law

The Plaintiffs bring two claims in the alternative to their breach of contract cause of action: (1) unjust enrichment and (2) promissory estoppel. (Doc. 19 at 22-24). The Defendants move to dismiss both claims, asserting "Plaintiffs cannot circumvent their lack of third-party beneficiary status by relabeling their claims as non-contractual, even though such claims arise out of the same factual predicate." (Doc. 20 at 27). The Court agrees and addresses each claim in turn.

To succeed on an unjust enrichment claim under Ohio law, [6] a plaintiff must prove three elements: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by

---

[6] The parties agree that Ohio law applies to the Plaintiffs' unjust enrichment and promissory estoppel claims. (Doc. 28 at 25 n.22). While Ohio law applies, the Court would reach the same conclusion if it were to apply Alabama law because the two states' laws are substantially similar concerning unjust enrichment and promissory estoppel. *See Sykes v. Payton*, 441 F.Supp.2d 1220, 1224 (M.D. Ala. 2006) (defining the elements of promissory estoppel); *Matador Holdings, Inc. v. HoPo Realty Inv., L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (defining the elements of unjust enrichment).

the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E.2d 1298, 1302 (1984)). Typically, "unjust enrichment claims may be pled in the alternative to a breach of contract claim when the existence of a contract is in dispute." *Id.* However, "a plaintiff may not recover under a theory of unjust enrichment when an express contract covers the same subject." *Id.*

Here, the Selling Agreements cover the same subject giving rise to the Plaintiffs' unjust enrichment claim. Namely, whether the Defendants had the obligation to pay the Plaintiffs trail commissions on previously sold variable annuity contracts after termination of the Selling Agreements. The Court finds no such obligation under the contract. Thus, "[the Plaintiffs] cannot bring an unjust enrichment claim to recover payment for the same prior sales of variable annuity contracts." *See Browning v. Ohio Nat'l Life Ins. Co*, 2019 WL 4885205 at *4 (S.D. Ohio Oct. 2, 2019) (finding that the plaintiff could not assert an unjust enrichment claim because the Selling Agreement covered the same subject); *Wuliger v. Mfg. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (stating "Ohio law is clear that a plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject."); *Ford v. Penn. Higher Educ. Assistance Agency*, 2018 WL 1377858 at *8 (dismissing the plaintiff's unjust enrichment because it relied on the same conduct that formed the basis of their breach of contract claim). Accordingly, the Defendants' Motion to Dismiss the Plaintiffs' unjust enrichment claim is due to be granted.

The Plaintiffs' promissory estoppel claim fares no better. Under Ohio law, a plaintiff must prove the following elements to establish a promissory estoppel claim: "(1) there must be a clear and unambiguous promise; (2) the party to whom the promise was made must rely on it; (3) the reliance is reasonable and foreseeable; and (4) the party relying on the promise must have been injured by the reliance." *Patrick v. Painesville Commercial Prop., Inc.*, 123 Ohio App. 3d 575, 704 N.E.2d 1249, 1254 (Ohio Ct. App. 1997).

To satisfy the first element, the Plaintiffs allege that the Defendants "promised to make payments, including trail commissions, *to broker-dealers*, which would, in turn, be passed on in large part to sales representatives, including Plaintiffs." (Doc. 19 at 24) (emphasis added). This allegation fails to establish that the Defendants made a clear and unambiguous promise to the Plaintiffs concerning the payment of trail commissions. In fact, the Plaintiffs' contention makes clear that the Defendants promised to pay trail commissions to the *broker dealers*, not the Plaintiffs.

Additionally, the Plaintiffs' failure to qualify as intended third party beneficiaries under the Selling Agreements precludes them from asserting their promissory estoppel claim. *See Ballard Group, Inc. v. DNP Intern., Inc.*, 2006 WL 3168348 at *2 (S.D. Ohio 2006) (finding that the plaintiffs could not bring their promissory estoppel claim in the alternative because they were not intended third-party beneficiaries under the contract at issue). Accordingly, the Defendants' Motion to Dismiss the Plaintiffs' promissory estoppel claim is due to be granted.

iii. The Plaintiffs fail to state a claim for tortious interference

Finally, the Defendants move to dismiss the Plaintiffs' tortious interference with business relations claim. (Doc. 20 at 32). In support of their motion, the Defendants argue that "a party's breach of contract that incidentally impacts a third-party's contractual rights is insufficient to satisfy the intentional interference element of a tortious interference claim." (*Id*. at 33). The Court agrees.

Under Alabama law,[7] the elements of tortious interference with a business relationship are "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

In the instant case, the Plaintiffs fail to state a claim for tortious interference with business relations because "mere refusal to deal is not an intentional interference with contractual relations." *Barber v. Bus. Products Center, Inc.*, 677 So. 2d 223, 228 (Ala. 1996), *overruled on other grounds by White Sands Group, L.L.C.*, 32 So. 3d at 14; *see also Bear Creek Enters. v. Warrior & Gulf Navigation Co.*, 529 So. 2d 959, 961 (Ala. 1988) (holding that the defendant's decision to terminate a contract with the plaintiff amounted to a refusal to deal, thus precluding any claim for intentional interference with contractual relations); Restatement (Second) of Torts, § 766 cmt. b (1979) (explaining "[d]eliberately

---

[7] The Court applies Alabama law to the Plaintiffs' tortious interference claim because under Alabama's choice-of-law rules "the law of the state in which the injury occurred governs the substantive right of an injured party . . .." *Rosa and Raymond Parks Inst. for Self Development v. Target Corp.*, 90 F.Supp.3d 1256, 1261 (M.D. Ala. 2015).

and at his pleasure, one may ordinarily refuse to deal with another, and the conduct is not regarded as improper, subjecting the actor to liability.").

The Plaintiffs' allegations illustrate that the Defendants' decision to terminate its contract with the broker dealers amounted to nothing more than a refusal to deal. Specifically, the Plaintiffs contend "[b]y announcing that it would not pay, *and refusing to pay*, trailing commissions to the broker dealers pursuant to the Selling Agreements . . . [the Defendants] intentionally and wrongfully caused the pass-through arrangements between the broker-dealers and Plaintiffs to be terminated." (Doc. 19 at 23-24) (emphasis added).

When the Defendants terminated the Selling Agreements and stopped payment on trail commissions, they simply exercised their right to refuse to deal with the broker dealers. Thus, the Defendants did not intentionally interfere with the Plaintiffs' business relations because Alabama law makes clear that they "have the right to do business with whoever they choose and . . . it is not actionable in tort." *Barber*, 677 So. 2d at 228 (ellipses added).

Accordingly, the Defendants' Motion to Dismiss the Plaintiffs' tortious interference claim is due to be granted.

## V.    CONCLUSION

In sum, the Plaintiffs fail to plead sufficient facts to establish that the Court may exercise either general or specific jurisdiction over the Defendants as it relates to the claims of non-resident Plaintiffs Bowers and Noone. Nor do the Plaintiffs establish that they qualify as intended third-party beneficiaries under the Selling Agreements. Moreover, the Plaintiffs' unjust enrichment and promissory estoppel claims fall short because the Selling

Agreements expressly cover the same subject matter. Lastly, the Defendants' mere refusal to deal with the broker dealers did not constitute intentional interference with the Plaintiffs' business relations.

Accordingly, it is

ORDERED that the Defendants' Motion to Dismiss (doc. 20) is GRANTED as follows:

1. The Defendants' Motion to Dismiss the claims of non-resident Plaintiffs Bowers and Noone for lack of personal jurisdiction is GRANTED.

2. The Defendants' Motion to Dismiss the Plaintiffs' breach of contract claim is GRANTED, and this claim is DISMISSED with prejudice.

3. The Defendants' Motion to Dismiss the Plaintiffs' unjust enrichment claim is GRANTED, and this claim is DISMISSED with prejudice.

4. The Defendants' Motion to Dismiss the Plaintiffs' promissory estoppel claim is GRANTED, and this claim is DISMISSED with prejudice.

5. The Defendants' Motion to Dismiss the Plaintiffs' tortious interference with business relations claim is GRANTED, and this claim is DISMISSED with prejudice.

6. The Defendants' Motion to Dismiss the Plaintiffs' declaratory judgment claim is GRANTED, and this claim is DISMISSED with prejudice.

A separate final judgment will be entered.

DONE this 19th day of November, 2019.

/s/ Emily C. Marks

EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE